IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| DEREK PORTER and SARAH PORTER, Husband and Wife, and, RESIDENTS OF SOUTH DAKOTA, <br><br> Plaintiffs, <br><br> vs. <br><br> FAREWAY STORES, INC., an Iowa corporation, <br><br> Defendant. | Case No. 4:18-cv-50 <br><br> **COMPLAINT** |

COME NOW the Plaintiffs, Derek and Sarah Porter, by and through their attorneys of record, Wandro and Associates, P.C., and Marler Clark, L.L.P., P.S., complaining of the Defendant, Fareway Stores, Inc., and allege and state as follows:

**PARTIES**

1. At all times relevant to this action, the Plaintiffs, Derek and Sarah Porter, reside in Harrisburg, South Dakota. Plaintiffs are citizens of the State of South Dakota.

2. At all times relevant to this action, Defendant, Fareway Stores Inc. was an Iowa corporation with its principal place of business located at 2300 8th Street, Boone, Iowa. Fareway Stores Inc. is a citizen of the State of Iowa. At all times relevant to this action, Fareway Stores Inc. was a manufacturer, distributor and seller of Chicken Salad to customers across Iowa, Minnesota, Illinois, Nebraska and South Dakota.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000, exclusive of costs; it is

1

between citizens of different states; and because Fareway Stores Inc. has certain minimum contacts with the State of Iowa such that the maintenance of this suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the Southern District of Iowa is proper pursuant to 28 USC § 1391(a)(1) and (2) because Fareway Stores Inc. was subject to personal jurisdiction in this judicial district at the time of the commencement of the action, and because a substantial part of the events or omissions giving rise to the Plaintiffs' claims and causes of action occurred in this judicial district.

## FACTS

**The Outbreak**

5. According to the Iowa Department of Health, to date there are at least 28 confirmed and 66 probable cases of *Salmonella* linked to Fareway Stores Inc. Chicken Salad in Iowa. There are reports of illnesses in Nebraska, Minnesota and Nebraska.

6. Last week the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS) issued a public health alert out of an abundance of caution due to concerns about illnesses reported in the state of Iowa that may be caused by *Salmonella* associated with a chicken salad product. This product was sold at all Fareway grocery stores in Iowa, as well as Illinois, Minnesota, Nebraska and South Dakota. The Chicken Salad item for this public health alert was produced between Dec. 15, 2017, and Feb. 13, 2018. The following product is subject to the public health alert: Varying weights of "Fareway Chicken Salad" sold in plastic deli containers with a Fareway store deli label. This product was shipped to all Fareway grocery stores in Iowa, Illinois, Minnesota, Nebraska and South Dakota and sold directly to consumers who shopped at Fareway.

7. The problem was discovered following reports of illness in Iowa. On Feb. 9, 2018, the Iowa Department of Public Health notified FSIS of an investigation of *Salmonella* related illnesses within the state of Iowa. FSIS continues to work with public health partners at the Iowa Department of Public Health and Department of Inspections and Appeals on this investigation. Updated information will be provided as it becomes available.

**Salmonella**

8. *Salmonella* is the second most common intestinal infection in the United States. More than 7,000 cases of Salmonella were confirmed in 2009; however, the majority of cases go unreported. The Centers for Disease Control and Prevention estimates that over 1 million people in the U.S. contract *Salmonella* each year, and that an average of 20,000 hospitalizations and almost 400 deaths occur from *Salmonella* poisoning, according to a 2011 report.

9. *Salmonella* infection usually occurs when a person eats food contaminated with the feces of animals or humans carrying the bacteria. *Salmonella* outbreaks are commonly associated with eggs, meat and poultry, but these bacteria can also contaminate other foods such as fruits and vegetables. Foods that are most likely to contain *Salmonella* include raw or undercooked eggs, raw milk, contaminated water, and raw or undercooked meats.

10. Symptoms of *Salmonella* infection, or Salmonellosis, range widely, and are sometimes absent altogether. The most common symptoms include diarrhea, abdominal cramps, and fever.

11. Typical Symptoms of *Salmonella* infection: Appear 6 to 72 hours after eating contaminated food and last for 3 to 7 days without treatment.

- Diarrhea
- Abdominal Cramps
- Fever of 100 F to 102 F
- Bloody diarrhea

- Vomiting
- Headache
- Body Aches

12. Complications of *Salmonella* poisoning are more likely to occur among young children and people age 65 or older. Possible complications include Reactive Arthritis is thought to occur in 2 to 15 percent of *Salmonella* patients. Symptoms include inflammation of the joints, eyes, or reproductive or urinary organs. On average, symptoms appear 18 days after infection. Irritable Bowel Syndrome can also be a long-term complication.

13. *Salmonella* infections generally last 3 to 7 days, and often do not require treatment. People with severe dehydration may need rehydration through an IV. Antibiotics are recommended for those at risk of invasive disease, including infants under three months old. Typhoid fever is treated with a 14-day course of antibiotics. Unfortunately, treatment of Salmonella has become more difficult as it has become more resistant to antibiotics. Finding the right antibiotic for a case of Salmonella is crucial to treating this bacterial infection.

**Derek and Sarah Porter Consumption of**
**Fareway Chicken Salad and *Salmonella* Infection**

14. Derek and Sarah Porter purchased Fareway Chicken Salad on February 8, 2018 from the Fareway store in Harrisburg, South Dakota.

15. On Sunday and Monday February 11th and 12th, both Derek and Sarah became ill with diarrhea and abdominal cramping. Both continued to suffer bouts of headache, stomach cramps and diarrhea until Dereck took Sarah to the Emergency Room at about 1:30 AM on Valentine's Day, February 14th.

16. In the Emergency Room several tests were run on Sarah and she was given an IV for dehydration. Because her liver enzymes were elevated, Sarah was admitted to the hospital.

She was prescribed pain medication due to the cramping. She remained hospitalized until February 16th.

17. Both Derek and Sarah had stool tests performed and both tests came back positive for *Salmonella*. Both were contacted by the South Dakota Department of Health and were informed that they were the first two cases linked to the Fareway Chicken Salad *Salmonella* Outbreak in South Dakota.

18. Derek and Sarah continue to suffer stomach cramps and diarrhea. Both have lost wages and may continue to lose wages in the future.

## COUNT I
### (Strict Product Liability)

19. The Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

20. The Defendant manufactured, distributed, and sold the adulterated Chicken Salad that injured the Plaintiffs.

21. The Defendant manufactured a food product, including Chicken Salad, for sale to the public.

22. Food that is contaminated by *Salmonella* is unsafe when put to the use reasonably foreseeable considering the nature of the product. Namely, *Salmonella* contaminated food is unfit for human consumption.

23. The Chicken Salad that Plaintiffs purchased, and consumed, was contaminated with *Salmonella* when it left the control of Defendant. Plaintiffs' consumption of the contaminated food caused them to become infected by *Salmonella* and to suffer injuries as a direct and proximate result of that consumption.

24.     The Defendant is strictly liable to the Plaintiffs for the harm proximately caused by the manufacture and sale of an unsafe and defective food product.

## COUNT II
### (Negligence)

25.     The Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

26.     The Defendant designed, manufactured, distributed, and sold Chicken Salad that was contaminated with *Salmonella,* a deadly pathogen.

27.     The Defendant owed a duty to all persons who purchased and consumed its product, including the Plaintiffs, to manufacture and sell Chicken Salad that was safe to eat, that was not adulterated with deadly pathogens, like *Salmonella*, and that was not in violation of applicable food and safety regulations.  The Defendant breached this duty.

28.     The Defendant owed a duty to all persons who purchased and consumed its products, including Plaintiffs, to ensure that any representations regarding the certifications its products had undergone prior to distribution and sale were made with reasonable care. Defendant breached this duty.

29.     The Defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food products, but failed to do so, and was therefore negligent.  The Plaintiffs were among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

30.     The Defendant breached the duties owed to the ultimate consumers of Chicken Salad by committing the following acts and omissions of negligence:

    a.    Failed to adequately maintain or monitor the sanitary conditions of its products, premises, equipment and employees, and the products, premises, equipment and employees of other entities in the supply chain of the subject Chicken Salad;

    b.    Failed to properly operate its facilities and equipment in a safe, clean, and sanitary manner;

    c.    Failed to apply its food safety policies and procedures to ensure the safety and sanitary conditions of its food products, premises, and employees;

    d.    Failed to apply food safety policies and procedures that met industry standards for the safe and sanitary production of food products, and the safety and sanitary condition of its premises and employees;

    e.    Failed to prevent the transmission of *Salmonella* to consumers of its Chicken Salad;

    f.    Failed to properly train its employees and agents how to prevent the transmission of *Salmonella* on its premises, from its facility or equipment, or in its food products;

    g.    Failed to properly supervise its employees and agents to prevent the transmission of *Salmonella* on its premises, from its facility or equipment, or in its food products; and

    h.    Failed to test its Chicken Salad for microbial pathogens, like *Salmonella.*

27. The Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of its food products. The Defendant breached this duty.

28. The Defendant owed a duty to the Plaintiffs to use reasonable care in the manufacture, distribution, and sale of its food products, to prevent contamination with *Salmonella*. The Defendant breached this duty.

29. The Plaintiffs' injuries proximately and directly resulted from the negligence of the Defendant, and from the Defendant's violations of statutes, laws, regulations, and safety codes pertaining to the manufacture, distribution, storage, and sale of food.

## COUNT III
### (Breach of Warranty)

30. The Plaintiffs incorporate the preceding paragraphs of this Complaint, by this reference, as if each of these paragraphs were set forth here in its entirety.

31. By offering Chicken Salad for sale to the public, Defendant impliedly warranted that such Chicken Salad was safe to eat, that it was not adulterated with a deadly pathogen, and that the Chicken Salad had been safely prepared under sanitary conditions.

32. The Defendant breached the implied warranties about the food they manufactured and sold to Plaintiffs, which was consumed by Plaintiffs causing Plaintiffs' injuries and losses.

33. The Plaintiffs' injuries proximately and directly resulted from Defendant's breach of implied warranties, and the Plaintiffs are thus entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray as follows:

(1) That the Court award the Plaintiffs judgment against Defendant for damages.

(2) That the Court award all such other sums as shall be determined to fully and fairly compensate the Plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by the Plaintiffs as the direct and proximate result of the acts and omissions of the Defendant;

(3) That the Court award the Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred;

(4)     That the Court award the Plaintiffs the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5)     That the Court award such other and further relief as it deems necessary and proper in the circumstances.

**JURY TRIAL DEMAND**

Plaintiffs demand trial by jury on all issues raised herein.

Dated this 20th day of February, 2018.

Respectfully submitted,

*\s\ Steven Wandro*
Steven Wandro                    AT0008177
WANDRO AND ASSOCIATES, P.C.
2501 Grand Avenue B
Des Moines, Iowa 50312
Telephone:   515/281-1475
Facsimile:   515/281-1474
swandro@2501grand.com

AND

*\s\ William D. Marler*
William D. Marler,               WSBA #17233
*Pro hac Vice Pending*
MARLER CLARK, LLP PS
1012 1st Avenue, 5th Floor
Seattle, Washington  98104
Telephone:   206/346-1888
Facsimile:   206/346-1898
bmarler@marlerclark.com

9